## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| **PAMELA KIRBY**, an individual, | § |
| | § |
| **Plaintiff** | § |
| | § |
| **v.** | § |
| | § |
| **TIMOTHY L. BARTON,** | § |
| an individual, | § |
| **JOHN MCELWEE**, an individual, | § |
| **JMJ DEVELOPMENT, LLC**, a | § |
| Delaware limited liability company | § |
| with its principal place of business in | § |
| Texas, | § |
| **2999TC ACQUISITIONS, LLC** | § |
| **f/k/a MO 2999 TC, LLC**, a Delaware | § |
| limited liability company with its | § |
| principal place of business in Texas, | § |
| **2999TC FOUNDERS, LLC**, a | § |
| Delaware limited liability company, | § |
| **2999TC JMJ, LLC**, a Delaware | § |
| limited liability company, | § |
| **2999TC JMJ GM, LLC**, a Delaware | § |
| limited liability company, | § |
| **2999 FIVE STAR GM, LLC**, a | § |
| Delaware limited liability company, | § |
| **FIVE STAR GM, LLC,** a Delaware | § |
| limited liability company, | § |
| **FIVE STAR MM, LLC**, a Delaware | § |
| limited liability company, | § |
| **FIVE STAR TC, LLC,** a Delaware | § |
| limited liability company, | § |
| | § |
| **Defendants.** | § |

## PLAINTIFF PAMELA KIRBY'S ORIGINAL COMPLAINT
## AND JURY DEMAND

Plaintiff Pamela Kirby files this Original Complaint against Timothy Barton, John McElwee, JMJ Development, LLC, 2999TC Acquisitions, LLC, 2999TC Founders, LLC, 2999TC JMJ, LLC, 2999TC JMJ GM, LLC, 2999TC JMJ MGR, LLC, 2999 Five Star GM, LLC, Five Star GM, LLC, Five Star MM, LLC, and Five Star TC, LLC, (collectively, "Defendants") and would respectfully show the Court as follows:

## I.
## INTRODUCTION AND BACKGROUND

1.      This is an action for common law intentional and willful fraud committed by Texas Defendants against Plaintiff Pamela Kirby (hereinafter "Ms. Kirby" or "Plaintiff").  Ms. Kirby is an Arizona resident who was fraudulently induced to invest substantial funds in a development in the Dallas, Texas area.   In order to accomplish the scheme and artifice to defraud Ms. Kirby, and in furtherance of Defendants' scheme to defraud her after obtaining an investment from Ms. Kirby, Defendants utilized instrumentalities of interstate commerce including, but not limited to, Federally Insured Financial Institutions, interstate electronic wires, and the internet to induce her and deprive her of the benefits she was promised by Defendants in connection with a luxury project in Dallas, Texas.

2.      Defendants have accomplished their fraud through the offering of unregistered securities across state lines.  The fraud and the prohibited acts and omissions of Defendants are proscribed, governed, and regulated under Section 10(b) of the Exchange Act, which provides and

authorizes a private right of action for damages, or, in the alternative, Section 12(a)(2) of the Securities Act for rescission, or, in the alternative, fraudulent inducement for rescission.

3.      Defendants Barton and McElwee sold securities to Plaintiff in 2999TC Founders, LLC, without a registration statement, across state lines, and through the use of instrumentalities of interstate commerce in violation of Section 5 of the Securities Act.

4.      In 2019, Ms. Kirby was lured to invest, and did invest, one million dollars ($1,000,000) to be used to acquire 2.4 acres of land and develop a 5-star luxury hotel and residences under the Mandarin Oriental Hotel and Condominium brand (the "Project"), a real estate development endeavor in Dallas, Texas. Ms. Kirby was lured by Defendant John McElwee using the instrumentalities of interstate commerce, including but not limited to emails generated in Texas and delivered in Arizona, on August 27, 2019 and September 4, 2019, said emails contained representations calculated to advance the scheme and artifice to defraud Ms. Kirby, and said representations were authorized by 2999TC Founders, LLC (herein the "Issuer") through its manager Defendant Barton. In these emails, Defendant McElwee guaranteed, among other things, that the investment would provide tax benefits and a "straight 15% return" if Ms. Kirby opted to exit during the construction loan phase of the development.  Both the "straight 15% return" and the "tax benefits" were very important, specific and unique to her interests, which promises, warranties, and representations were relied upon by her and were critical and material to her decision to invest in the development as was intended by Defendants' orchestrated scheme to defraud.

5.      Defendants, in an effort to hide their interstate unregistered securities scheme to defraud, did not comply with their obligation to supply Ms. Kirby with federal tax documents—

Schedule K1 for the 2019 and 2020 tax years—that would have put Ms. Kirby on notice that the promised tax benefits were not accruing.

6.      Upon Ms. Kirby's realization that the tax benefits promised had not materialized during the first two years of the investment, she repeatedly requested instructions for liquidating her investment or for the return of her investment. Defendants, in order to protect their fraudulent scheme from being discovered, did not provide her with instructions pursuant to her requests and instead delayed, obfuscated, and ultimately offered to transfer her securities into another unregistered securities offering.

7.      Defendant Barton was on notice that the Project was being foreclosed upon in August 2020, as discussed below. Defendants intentionally withheld this information from Ms. Kirby.

8.      On April 11, 2022 Ms. Kirby, through counsel, demanded access to the company books and records, the operating agreement, and other true and full information regarding the status of the business and financial condition of 2999TC Founders, LLC from Mr. Timothy Barton, its president via email and certified mail for the purpose of determining "the existence of gross negligence or willful misconduct" as she was concerned about "[i]rregularities in the management of Company [that] have caused [her] great concern about her investment and the mounting losses." A certified mail demand letter, sent to 1755 Wittington Plaza, Suite 340 in Dallas, TX, 75234, the address on co-Defendant JMJ Development, LLC's letterhead on the cover letter provided by Defendant Barton alongside the subscription agreement, was returned to sender as undeliverable and "UNABLE TO FORWARD".

9.      As of the filing of this Complaint, the company and its authorized representatives and agents have refused to provide Ms. Kirby, a member of 2999TC Founders, LLC, with access

to the books and records of the limited liability company after a proper demand and in violation of her rights as a member of a Delaware limited liability company.

10.     Defendants have also wrongfully, as part of their scheme and artifice to defraud Ms. Kirby, and in violation of her rights, refused to provide Ms. Kirby with copies of the operating agreement and financial statements for 2999TC Founders, LLC.

11.     Outside General Counsel for JMJ Development, LLC, Khudabuksh K. Walji, Esq., did contact Plaintiff's counsel and acknowledged receipt of Plaintiff's April 11, 2022 evidence preservation demand placing all Defendants and their representatives and agents on notice to preserve and protect all documents related to Ms. Kirby and the development, *in toto*.

12.     Had Defendants been forthright with Ms. Kirby, she could have sought to intervene in the foreclosure proceeding to protect her rights, engaged counsel earlier to investigate the status of her investment, investigated the status of the tax benefits promised her sooner, sued before the investment's value decreased, or taken some other action to protect her investment prior to suffering harm to her investment.

## II.

## PARTIES

13.     Plaintiff Pamela Kirby ("Plaintiff") is an individual residing in Maricopa County, Arizona.

14.     Upon information and belief, Defendant Timothy L. Barton ("Defendant Barton") is an individual residing in Denton County, Texas. Defendant Barton is associated or affiliated with many of the limited liability company defendants as managing member, founder, or authorized agent and representative.

15.     Upon information and belief, Defendant John McElwee ("Defendant McElwee") is an individual residing in Pennsylvania. He is associated with QMAC Capital, Inc., and acted as broker for the securities offered and eventually issued to Plaintiff.

16.     Upon information and belief, Defendant JMJ Development, LLC ("JMJ") is a limited liability company organized under the laws of the State of Delaware with its principal place of business at 1755 Wittington Place, Suite 340, Dallas, Texas 75234.

17.     Upon information and belief, Defendant 2999TC Acquisitions, LLC, formerly known as MO 2999TC, LLC, is a limited liability company organized under the laws of the State of Delaware with its principal place of business at 1755 Wittington Place, Suite 340, Dallas, Texas 75234.

18.     Upon information and belief, Defendant 2999TC Founders, LLC is a limited liability company organized under the laws of the State of Delaware.

19.     Upon information and belief, Defendant 2999TC JMJ, LLC is a Texas limited liability company with a registered address of 13901 Midway Road, Suite 102, Dallas, Texas 75244-4388.

20.     Upon information and belief, Defendant 2999TC JMJ GM, LLC is a limited liability company organized under the laws of the State of Delaware.

21.     Upon information and belief, Defendant 2999TC JMJ MGR, LLC is a limited liability company organized under the laws of the State of Delaware.

22.     Upon information and belief, Defendant 2999 Five Star GM, LLC is a limited liability company organized under the laws of the State of Delaware.

23.     Upon information and belief, Defendant Five Star GM, LLC is a limited liability company organized under the laws of the State of Delaware.

24.     Upon information and belief, Defendant Five Star MM, is a limited liability company organized under the laws of the State of Delaware.

25.     Upon information and belief, Defendant Five Star TC, LLC is a limited liability company organized under the laws of the State of Delaware.

## III.
## JURISDICTION AND VENUE

26.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1337, and 1367, 15 U.S.C. § 78aa, and 15 U.S.C. § 77vv. This court has original subject matter jurisdiction over Plaintiff's securities fraud claims under § 1331 and supplemental jurisdiction over Plaintiff's fraudulent inducement claim under § 1337 because this action arises under the Securities Exchange Act; 15 U.S.C. § 78j; Securities and Exchange Commission Rule 10b-5; 17 C.F.R. § 240.10b-5; and the Securities Act, 15 U.S.C. § 77l. This Court also has subject matter jurisdiction under 28 U.S.C. § 1332 because the matter in controversy involves citizens of different states and a subject of a foreign state and exceeds the sum or value of $ 75,000, exclusive of interest and costs.

27.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because all or a substantial portion of the events or omissions giving rise to the claims in this lawsuit occurred in this District.

## IV.
## FACTUAL ALLEGATIONS
### Plaintiff's Investment and Defendants' Misrepresentations

28.     In 2019, Plaintiff was looking for an investment opportunity. She contacted Julio Gonzalez, Founder and CEO of Engineered Tax Services, Inc., a Florida engineering firm with whom she had a preexisting relationship, and informed him of the object of her search.

29.    Mr. Gonzalez suggested that Plaintiff speak with Defendant John McElwee, a finance professional in Dallas.

30.    Plaintiff had no preexisting relationship with Defendant McElwee.

31.    Defendant McElwee informed Plaintiff that there was an investment that might interest her because of its tax advantages.

32.    The investment opportunity in question was the Project.

33.    Upon information and belief, Defendant McElwee is not the Issuer of the unregistered securities sold to finance the Project. This belief is based on the Subscription Agreement identifying 2999TC Founders, LLC as the Issuer.

34.    At this time Plaintiff is not aware of the compensation, if any, received by Defendant McElwee for brokering Plaintiff's securities purchase from the Issuers.

35.    The Mandarin Oriental Hotel, as it was represented to Plaintiff by Defendant McElwee via email communications on August 27 and September 4, 2019, inclusive of attachments, was to be a 25-story hotel and condominium luxury development located at 2999 Turtle Creek Boulevard in Dallas, Texas.

36.    Upon information and belief, Defendant JMJ had substantial experience in sophisticated transactions, closing deals in a combined amount of over $2.5 billion. This belief is based on the information provided by JMJ in its website jmjdevelopment.com.[1]

37.    Upon information and belief, Defendant Barton knew that the land underneath the Project was being foreclosed on by August of 2020. This belief is based upon a magistrate's

---

[1] *Hospitality JMJ Development*, available at https://www.jmjdevelopment.com/hospitality/. Last seen on May 17, 2022

opinion[2] addressing litigation to which Defendant Barton and 2999TC Acquisitions, LLC were parties. Defendant Barton deliberately, and in order to delay discovery of the scheme to defraud that had through false material representations and the use of the instrumentalities of interstate commerce obtained at least a million dollars from out of state investors, omitted key information —that the Project land had been foreclosed upon—from his communications with Plaintiff regarding the status of Plaintiff's investment.

38.     The cited case arose from a $32.5 million loan for the Project land. On January 31, 2020, 2999TC Acquisitions, LLC failed to pay timely the Project's property taxes. The lender sent 2999TC Acquisitions, LLC and Defendant Barton a demand letter for the tax payment on April 6, 2020.  Later, in August of 2020, the lender attempted to foreclose on the land. Then, the lender filed for foreclosure on the land on November 20, 2020, with a sale to occur on January 5, 2021. Defendants Barton and 2999TC Acquisitions, LLC sought injunctive relief enjoining the foreclosure sale based on trade secrets. The magistrate's opinion was nonetheless adopted.[3]

39.     In an email to Plaintiff dated August 27, 2019, at 8:40 AM (hereafter "August 27 McElwee Email"), Defendant McElwee shared 8 attachments explaining the Project's financial details and what Plaintiff should expect from investing in the Project. Among the representations and warranties, two were critical in inducing Plaintiff's investment in Project, which she relied upon:

(a)     "The Building Donation will create approximately $45mm of Tax value"; and

---

[2] *2999TC Acquisitions, LLC v. 2999 Turtle Creek, LLC*, No. 3:20-cv-3229-S-BT, 2021 U.S. Dist. LEXIS 139789 (N.D. Tex. July 6, 2021) (a magistrate opinion).
[3] *2999TC Acquisitions . LLC v. 2999 Turtle Creek, LLC*, No. 3:20-CV-3229-S-BT, 2021 U.S. Dist. LEXIS 138905 (N.D. Tex. July 26, 2021) (order accepting findings, conclusions, and recommendation of the magistrate).

Original Complaint

(b)    "equity investor will get 1.5X of their investment back in the form of tax deduction within 12-24 months; plus 12% preferred interest and principal back with 12 months on construction loan takeout, or have the option to roll into a GP interest in the $363mm Mandarin Dallas project." *August 27 McElwee Email*.

40.    Defendant McElwee then offered: "Pam, let us know if you have any additional questions and we can set up a call with the developer JMJ Hospitality." *Id.* On Wednesday September 4, 2019, at 2:39 PM, Defendant McElwee sent Plaintiff an additional email, (hereafter "September 4 McElwee Email") to share what he identified as the "subscription docs for the Mandarin land deal" and a "proforma for the Mandarin Project." *September 4 McElwee Email*. Defendant McElwee intentionally created a sense of urgency by stating: "Your moneys will be placed in escrow until land deal is finalized which is scheduled for this Monday, September 9th, 2019." *Id*. The September 4 McElwee Email, sent through interstate commerce, reiterated the tax and exit benefits to induce Plaintiff to consummate the securities purchase: "In addition to the charitable contribution value, you will have an opportunity to get a straight 15% return on your money if you decide to get out at construction loan, 6-12 months from land acquisition." *Id.*

41.    The communications from Defendant McElwee, as they related to tax benefits, were designed to, and succeeded, in creating the expectations of tax benefits upon acquisition of the real property where the Project was to be constructed. Plaintiff reasonably relied on Defendant McElwee's representations.

42.    On or about September 6th, 2019, Plaintiff and 2999TC Founders, LLC, by its managing member, Defendant Barton, in its capacity of Managing Member of Defendant Five Star MM, LLC, executed the Subscription Agreement (the "Agreement"), a true and accurate copy of which is attached hereto, made a part hereof, and labeled for identification as Exhibit A. By

executing the Agreement, Plaintiff committed and thereafter invested one million dollars ($1,000,000) in the Project based on, and in reliance upon, the representations made, wiring the funds across state lines in the manner requested by Defendant McElwee.

43.    The securities sold by Defendants through the Agreement are not registered with the Securities and Exchange Commission and no exemption from registration applies.

44.    The Agreement is titled: *Subscription Agreement - Investment in the Ownership of the Mandarin Oriental Hotel and Condominium Project ("Project") located at 2999 Turtle Creek Blvd., Dallas, Texas ("Property")* and by its terms establishes that:

a.    no registration statement was in effect or filed (*Exhibit A*, at Supplemental Terms, Section 9(d)) ("The Founding Investor understands that the Founder Units have not been and will not be registered under the Securities Act of 1933, as amended (the Securities Act"), or any state law, and that the Founder is not registered under the Investment Founder Act of 1940, as amended (the "Investment Founder Act").");

b.    that defendant offered and sold securities (*Exhibit A*, at Supplemental Terms, Section 1) ("It is agreed that you will acquire newly issued membership interests in the Founder in exchange for your investment as a capital contribution to the Founder which shall be made in denominations of One Million and 00/100 US Dollars ($1,000,000 USD) which represents one half interest in a "Founder Unit." ... This capital will be contributed to the Founder by way of a Subscription Agreement (as agreed to by the parties as described herein) through the sale of the Founder Units in the Founder which shall be designated as the Class A Investor."); and

c.    that the offer and sale took place in interstate commerce, as Plaintiff resides in Maricopa County, Arizona, the Project and Defendant Barton are both, upon information

Original Complaint

and belief, domiciled in Texas. *See Exhibit A, generally.* (The Subscription Agreement was addressed by Issuer to Ms. Pam Kirby at her address in Arizona.)

45.     After executing the Agreement on or about September 19, 2019, Plaintiff emailed it to Defendant McElwee.

46.     On September 16, 2019 at 6:31 PM, Defendant McElwee forwarded to Ms. Kirby the fully executed agreement via email.

47.     On September 7, 2020, at 10:24 AM, Plaintiff emailed Defendant McElwee, saying, "Could you please direct me to who I should contact to obtain my 2019 K1? I have no record of receiving it."

48.     On September 18, 2020, at 12:42 PM, Plaintiff emailed Defendant McElwee and expressed her concern with the difficulty of receiving the 2019 Schedule K-1: "I'm really surprised it's such a difficult task to get the K1 for such a large project."

49.     On September 18, 2020, at 1:13 PM, Murugan Venkat, of JMJ Development, LLC, in an email to Plaintiff, Defendants McElwee and Barton, *et al.*, candidly admitted that Issuer has no record of the holders of the securities sold to Plaintiff when he wrote "I read the email from Pam Kirby On Mon, Sep 7, 2020 at 10:24 AM which helps me to identify (a) the amount; and (b) 5% membership in 2999TC Founders LLC." Additionally, Murugan Venkat wrote, "Delay in the tax preparation is regretted and the tax preparer is doing the best to expedite it." Communications between Plaintiff and Defendants were difficult. Eventually, upon receipt of her K1s forms that showed no tax benefits had accrued, Plaintiff sought to divest from the Project.

50.     On September 23, 2020, at 6:52 PM, Defendant Barton emailed Plaintiff and Murugan Venkat with carbon copy to Defendant McElwee, admitting and confessing that the securities were not sold by the Issuer: "As this investment was handled by John [McElwee] and

we did not interact with you directly we wanted to be sure the information we have on file was correct… Since John seemed busy today and Murugan did not get a confirmation from him he felt best to have your confirmation."

51.     Defendant Barton and McElwee directly coordinated in the execution of the scheme to defraud with Issuer's active participation in the solicitation by Defendant McElwee.

52.     On September 24, 2021, at 10:32 AM, Plaintiff emailed Murugan Venkat, and Defendants McElwee and Barton: "I would like instructions on how I liquidate this investment. I'm surprised at the lack of communication for such a large investment."

53.     On September 24, 2021, at 9:37 AM, Defendant Barton responded to Plaintiff and Murugan Venkat with carbon copies to Defendant McElwee *et al*., deflecting the question and attempting to buy time by stating that "[w]e are in the design the process [sic] that will finish in January at which time we will take our construction loan and our new LP will fund." Defendant Barton offered to either "put [Plaintiff's] investment into the LP funding… or convert to a condo purchase contract… you can decided [sic] that in first quarter."  This email was in furtherance of the Defendants' continued scheme to defraud Ms. Kirby and omitted material truthful events and facts surrounding the scheme which each and all of them employed, jointly and severally.

54.     Plaintiff sent a second email two minutes later to Murugan Venkat with carbon copy to Defendants McElwee and Barton, asking, "Again, who do I talk to about liquidating this investment?"

55.     On September 28, 2021, at 11:00 AM, Plaintiff again emailed Defendants reiterating that "I was led to believe I would receive tax credits along the way. Either I need to understand how I make that happen or I need to pull my money out of this investment. Somebody is making money on my investment and it isn't me!"

56.     On October 4, 2021 at 9:41 AM, Plaintiff emailed Defendant Barton and Murugan Venkat inquiring, "As you put together the memo for me this week, please address why the K1 just reflects the initial investment with no investment gains – I'm trying to triangulate that with the phone call last week when it was stated that my money was growing."

57.     On October 8, 2021 at 4:58 PM, Murugan Venkat emailed Plaintiff to explain that the Schedule K1 reflected only the initial investment:

"Books of accounts are historical. Actual money received in the bank is used for accounting. The Schedule K-1 is prepared from the year-end financial statements extracted from the books. Hence the same amount [what was shown last year] [sic] is also showing now in the 2020 K-1… Also, revenue is recognized at the end of the project, when it becomes fully operational. Also, appreciation in the market value as well as the expected profits can be accounted when the project is completed. I believe that the above lines explains as to why [sic] the schedule K-1 is not reflecting the gains. As directed by Mr. Barton, I am here to answer your questions and it is my pleasure to work with you."

58.     On October 9, 2021, at 11:34 AM, Plaintiff emailed Defendant Barton requesting "instructions to pull my money out of the project." And then, in a follow up email, Plaintiff pled with Barton again: "Thanks for trying to get John involved. While we wait for him, can I please just get the instructions for withdrawing my cash?" In another email on the same day, at 9:32 AM, Plaintiff asked Murugan Venkat for "instructions to pull my money out of the project." She wrote further that "This isn't what I signed up for."

59.     On October 11, 2021 at 1:11 PM, Plaintiff emailed Defendant Barton and Murugan Venkat with carbon copy to Defendant McElwee, *et al.*, stating: "I didn't receive an email on how

to take advantage of tax benefits, so please provide instructions by Tuesday, October 12, 5pm on how to pull my money out of the project."

60.     On October 17, 2021 at 2:37 PM, Defendant Barton emailed Ms. Kirby and Murugan Venkat with carbon copy to Defendant McElwee, *et al*., stating that: "To answer your question we are targeting February to have our construction loan and at that time the full funding is the window [sic] for you to get paid out."

61.     On or about the Spring of 2022, Defendant McElwee, called Ms. Kirby in a state of consternation approaching panic to provide what amounts to a false exculpatory statement. Defendant McElwee accused Mr. Julio Gonzalez of lying to him about Ms. Kirby identify and that "Pamela Kirby" was an alias for a "famous actress". This false exculpatory statement was intended to direct Ms. Kirby's investigation away from the Defendants and consistent with, and part of, the scheme and artifice to defraud Mr. Kirby and conceal the fraud.

62.     On February 8, 2022, at 4:47 PM, Defendant Barton emailed Plaintiff with a carbon copy to Bella Khusal, with JMJ Development, LLC, stating that: "We have the Bankers in this week now that everyone back to work [sic] and the freeze in Dallas is over we will have updates next few week [sic]… Once we finish next two weeks we hope to have a date for construction loan."

63.     On February 8, 2022, at 6:39 PM, Plaintiff emailed Defendant McElwee inquiring, "I just emailed [Defendant Barton], but can you please give an update on what progress/conversations you have had to get my investment returned?"

64.     On March 13, 2022, at 11:11 AM, Plaintiff requested by email an update regarding receiving her 2021 Schedule K1 and getting her investment back.

65.     On March 21, 2022, at 11:15 AM, Murugan Venkat emailed Plaintiff the 2021 Schedule K-1, which showed a substantial loss of $201,040.

66.     On April 11, 2022, Plaintiff, through counsel, sent Defendant Barton a demand letter that included a request for information and records including, but not limited to, financial statements of relevant entities, a schedule of members and their contact information, and formation documents.

67.     As of the date of filing, Plaintiff has received no such records in response to the April 11, 2022 request.

68.     As of the date of filing, Plaintiff has neither accrued the promised tax benefits, nor has she received any income from her investment in the Project. Furthermore, she has not received her investment back from Defendants.

## V.
## <u>FIRST CLAIM FOR RELIEF</u>
### Fraud in Connection with the Purchase or Sale of Securities
### *Section 10(b) of the Exchange Act and Rule 10b-5 thereunder*

69.     Plaintiff incorporates the allegations in paragraphs 1 through 68 as if fully set forth herein.

70.     By repeatedly misrepresenting to Plaintiff the tax benefits of their investment program, and by otherwise making material misrepresentations, directly and indirectly, to Plaintiff, Defendants directly and indirectly, by the use of the means and instrumentalities of interstate commerce, or of the mail, in connection with the purchase or sales of securities:

   a)      Have employed devices, schemes, or artifices to defraud;

   b)      Have made untrue statements of material fact, or have omitted, are omitting and are about to omit to state material facts necessary in order to make the

statements made, in light of the circumstances with which they were made, not misleading; and

c)      Have engaged in transactions, acts, practices and courses of business which operated as a fraud upon purchasers of securities.

Furthermore, Plaintiff reasonably relied on these misrepresentations and Defendants induced the transaction through these misrepresentations.

71.      Upon information and belief, Defendants knew their misrepresentations' were fraudulent when made to Ms. Kirby because they repeated the false promise of tax benefits and referred to construction loans after the date when the underlying real estate for the Project had been foreclosed by a third party.

72.      By reason of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5 thereunder, 17 C.F.R. §240.10b-5.

73.      As a result of Defendants' violation of Section 10(b) of the Exchange Act, Plaintiff has been damaged at least in excess of one million dollars ($1,000,000), plus interest, the full amount of which to be proven at trial, all proximately caused by Defendants' acts and omissions and violations of law as described above and herein.

**VI.**
**SECOND CLAIM FOR RELIEF**
**Fraud in Connection or the Purchase or Sale of Securities**
**Section 12(a)(2) of the Exchange Act, codified at 15 U.S.C. § 77l(a)(2)**

74.      Plaintiff incorporates the allegations in paragraphs 1 through 68 as if fully set forth herein.

75.      This cause of action arises under Section 12(a)(2) of The Securities Act of 1933. 15 U.S.C. § 77l.  Section 12(a)(2) makes any person liable who offers or sells a security by means

of a prospectus or oral communication that includes a material misrepresentation or material omission.

76.     Defendants' promises of tax breaks were material to Plaintiff's investment decision and, in light of the circumstances, the unqualified inducements were fraudulent.

77.     Upon information and belief, the fraudulent nature of the material tax benefit misrepresentation was instrumental to the distributions scheme designed by Issuer and pushed through the third-party unregistered broker.

78.     By repeating promises of tax benefits associated with the securities in emails to Plaintiff which included no qualifications, the veracity of which Plaintiff did not know at the time of the sale, Defendants have violated Section 12(a)(2) of the Securities Act.

79.     As a result of Defendants' violation of Section 12(a)(2) of the Securities Act, Plaintiff has been proximately damaged at least in excess of one million dollars ($1,000,000), plus interest, the full amount of which to be proven at trial, all proximately caused by Defendants' acts and omissions and violations of law as described above and herein.

## VI.
## THIRD CLAIM FOR RELIEF
### Fraudulent Inducement under Texas Common Law

80.     Plaintiff incorporates the allegations in paragraphs 1 through 68 as if fully set forth herein.

81.     The District Court has jurisdiction of this Count under the doctrine of supplemental jurisdiction, in that the claim of fraudulent inducement arises out of the same transaction as the First and Second Claims for Relief, above.

82.     Defendants knew at the time they made the false representations and concealed the material facts as alleged in Paragraphs 37-40 above that such representations were untrue and that

they were concealing material facts from Plaintiff. Defendants acted with the intention to deceive and mislead Plaintiff, to fraudulently induce Plaintiff to invest in the Project, and to fraudulently misappropriate and obtain control over the funds representing the Plaintiff's investment to make use of such funds and assets in conducting the business of Defendants, and/or in meeting the debts and liabilities of the companies associated with Defendants.

83.     In furtherance of their fraudulent scheme, Defendants did not intend to produce timely those documents which they had an obligation to produce:

a.     Defendants made a practice of withholding Schedule K-1s from Plaintiff as long as possible to delay putting her on notice of the fraudulent scheme;

b.     Defendants made a practice of not answering Plaintiff's inquiries as to how to exit with her investment, instead delaying as long as possible; and,

c.     Defendants did not produce books and records upon a valid request for the same by Plaintiff, in violation of § 18-305 of the Delaware Limited Liability Company Act.

84.     Plaintiff relied upon these misrepresentations as alleged in Paragraphs 37-40 in deciding to invest in the Project and to execute the Subscription Agreement and proffer her capital.

85.     As a direct and proximate result of Defendants' actions as described above, and because of her reliance on the Defendants' misrepresentations as alleged, Plaintiff has been damaged at least in excess of one million dollars ($1,000,000), plus interest, the full amount of which to be proven at trial.

**VII.**
**FOURTH CLAIM FOR RELIEF**
**Violation of Section 12(a)(1) of the Securities Act**

86.     Plaintiff incorporates the allegations in paragraphs 1 through 68 as if fully set forth herein.

87.     Defendants' conduct amounted to the unregistered offer and sale of securities in interstate commerce in violation of Section 12(a) the Securities Act of 1933.

88.     No registration statement was in effect or filed in relation to the security.

89.     Defendant sold a security.

90.     The offer or sale took place in interstate commerce.

91.     As a direct and proximate result of Defendants' conduct and actions as described above, Plaintiff has been damaged at least in excess of one million dollars ($1,000,000), plus interest, the full amount of which to be proven at trial.

## VIII.
## FIFTH CAUSE OF ACTION
### Control Person Liability under section 20(a) of the Exchange Act and Section 15 of the Securities Act

92.     Plaintiff incorporates the allegations in paragraphs 1 through 68 as if fully set forth herein.

93.     Issuer and Defendant Barton directly or indirectly controlled all of the Defendants involved in the sale of unregistered securities for the purpose of executing an elaborate scheme to defraud out of state investors through said sales.

94.     Defendant McElwee induced the sale of securities using the materials and at the direction of Issuer.

95.     The criminal enterprise advanced by Defendants to defraud investors through the sale of unregistered securities was in contravention of the rules and regulations of the Securities and Exchange Commission and designed to protect the investing public.

96.     All Defendants are jointly and severally liable for the damages caused by Issuer through its fraudulent and/or unregistered, and non-exempted from registration, sales of securities in interstate.

97.     As a direct and proximate result of Defendants' conduct and actions as described above, Plaintiff has been damaged at least in excess of one million dollars ($1,000,000), plus interest, the full amount of which to be proven at trial.

## IX.
## SIXTH CAUSE OF ACTION
**Use of Manipulative or Deceptive Devices; Contravention of Rules and Regulations by Broker or Dealer in Violation of Exchange Act Section 15(c)(2) [15 U.S.C. § 78o(c)(2) against Defendant McElwee**

98.     Plaintiff incorporates the allegations in paragraphs 1 through 68 as if fully set forth herein.

99.     Defendant McElwee directly or indirectly, by the use of the mails or the means or instrumentalities of interstate commerce to effect a transaction in, or to induce or attempt to induce the purchase or sale of, any security by means of manipulative, deceptive, or other fraudulent device or contrivance as detailed in this complaint.

100.    As a direct and proximate result of Defendants' conduct and actions as described above, Plaintiff has been damaged at least in excess of one million dollars ($1,000,000), plus interest, the full amount of which to be proven at trial.

## X.
## DEMAND FOR JURY TRIAL

101.    Plaintiff hereby demands a trial by jury on all contested issues of fact set forth herein.

## XI.
## RELIEF REQUESTED

THEREFORE, plaintiff requests that this Court enter judgment in favor of Plaintiff and:

1.      Award Plaintiff compensatory damages at least in the amount of one million dollars ($1,000,000) plus interest; or, in the alternative, rescission, the total sum to be proven at trial;

2.      Punitive damages in an amount to be determined by the Court to punish the Defendants and deter Defendants and others from engaging in similar schemes to defraud and/or induce other victims by way of fraud and from violations of law;

3.      Award Plaintiff her costs, together with reasonable attorney's fees;

4.      Award Plaintiff such other relief as the Court may deem proper inclusive of special damages for fees and costs and those additional fees, costs and related relief the Court determines just and appropriate;

Dated: July 6, 2022

Respectfully submitted:

James C. Sabalos, Esq.
Texas Bar No: 17499100
Nevada Bar No: 8649
California Bar No: 182545
Law Offices of James C. Sabalos
407 Flintdale Road
Houston, Texas 77024
Telephone: 949.355.6084
Facsimile: 602.801.2539
E-mail: jimsabalos@hotmail.com

**COUNSEL FOR PLAINTFF**

**PAMELA KIRBY**

*Original Complaint*